## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRYSTAL DAWN WEIMER,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| vs. | ) | **Civil No. 17-1265** |
| | ) | **Chief Magistrate Judge Maureen P. Kelly** |
| **COUNTY OF FAYETTE,** | ) | |
| **PENNSYLVANIA, OFFICE OF THE** | ) | |
| **FAYETTE COUNTY DISTRICT** | ) | |
| **ATTORNEY, CITY OF** | ) | |
| **CONNELLSVILLE, NANCY VERNON,** | ) | **Re: ECF No. 50** |
| **in her Official and Individual capacities,** | ) | |
| **and RONALD HAGGERTY, JR.,** | ) | |
| **THOMAS CESARIO, THOMAS** | ) | |
| **PATTON, and BEVERLY ASHTON, in** | ) | |
| **their individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

**KELLY, Chief Magistrate Judge**

Pending before the Court is the Rule 12(b)(6) Motion to Dismiss filed by Defendant Thomas Cesario ("Cesario"). ECF No. 50. Cesario seeks the dismissal with prejudice of all claims filed against him in the Amended Complaint by the plaintiff, Crystal Dawn Weimer ("Plaintiff" or "Weimer").

On April 7, 2006, Weimer was wrongfully convicted of third-degree murder and conspiracy to commit third-degree murder in connection with the murder of Curtis Haith ("Haith"). ECF No. 47 at ¶ 11. Haith had been murdered outside of his apartment, brutally beaten and shot in the face. Id. ¶ 21. As a result of this wrongful conviction, Weimer was incarcerated for more than eleven years before she was fully exonerated of all charges. Id. ¶ 11. The individually named defendants in this matter are: (1) Nancy Vernon ("Vernon"), during the relevant time period the district attorney for Fayette County; (2) Cesario, a detective lieutenant in

the Connellsville Police Department, who was the lead investigator of the Haith murder for the Connellsville Police Department until his retirement in September 2002; (3) Ronald Haggerty ("Haggerty"), a sergeant in the Connellsville Police Department who took over as lead investigator of Haith's murder once Cesario retired; (4) Thomas Patton ("Patton"), a corporal in the Connellsville Police Department who led the investigation of Haith's murder after Weimer's convictions were vacated; and (5) Beverly Ashton ("Ashton"), a corporal in the Pennsylvania State Police Cold Case Unit, who was the lead officer for the state police's investigation of Haith's murder that led to Weimer's conviction. Id. ¶¶ 15-19.

## I. PROCEDURAL BACKGROUND

Weimer filed her original Complaint against the defendants, County of Fayette, Pennsylvania ("Fayette County"), Office of the Fayette County District Attorney, Connellsville Township,[1] City of Connellsville ("Connellsville"), Vernon, in her official and individual capacities, and Haggerty, Cesario, Patton, and Ashton in their individual capacities on September 28, 2017. ECF No. 1. The defendants filed motions to dismiss the original Complaint. ECF Nos. 23, 29, 32, and 35, and Weimer file a Motion for Leave to File an Amended Complaint. ECF No. 45. The Court granted the Motion for Leave to File an Amended Complaint, ECF No. 46, and on January 30, 2018, Weimer filed her Amended Complaint, ECF No. 47. Cesario filed a Motion to Dismiss the Amended Complaint and supporting brief. ECF Nos. 50-51. Weimer filed a brief in opposition to Cesario's motion to dismiss. ECF No. 62. Cesario filed a reply brief in response to Weimer's opposition brief. ECF No. 64. Cesario's Motion to Dismiss is ripe for review. [2]

---

[1] Connellsville Township was terminated as a party in this action on January 30, 2018.

[2] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 21, 22, 27, 28, and 38.

## II.  STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See also McTernan v. City of York, Penn., 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469,

at *1 (D. Del. Feb. 19, 2008) (quoting <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 231 (3d Cir.

2008)). "This 'does not impose a probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of the necessary element." <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 550 U.S. at 556

n. 3).

The United States Court of Appeals for the Third Circuit expounded on the

<u>Twombly/Iqbal</u> line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

<u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 221 (3d Cir. 2011) (quoting <u>Santiago v.</u>

<u>Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010)).

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to

resolve disputed facts or decide the merits of the case." <u>Tracinda Corp. v. DaimlerChrysler AG</u>,

197 F.Supp.2d 42, 53 (D. Del. 2002) (citing <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir.

1993)). Indeed, the Supreme Court has held that a complaint is properly dismissed under Rule

12(b) where it does not allege "enough facts to state a claim to relief that is plausible on its face,"

<u>Twombly</u>, 550 U.S. at 570, or where the factual content does not allow the court "to draw the

reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at

678. The question is not whether the plaintiff will prevail in the end but, rather, whether the

plaintiff is entitled to offer evidence in support of his or her claims. <u>Swope v. City of Pittsburgh</u>,

90 F.Supp.3d 400, 405 (W.D. Pa. 2015) (citing Oatway v. American Intern. Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003)).

Attached to Cesario's Motion to Dismiss are two documents. Exhibit A is a Connellsville City Council Agenda dated September 10, 2002 which indicated that Cesario was resigning from the Connellsville Police Department effective September 15, 2002 ("the Connellsville Council Agenda"). ECF No. 50-2 at 2. Exhibit B is a 48-page Connellsville Police Department's Report on the Haith murder ("the Police Report") which was submitted to this Court as part of Weimer's federal habeas corpus case, Civ. No. 13-1808, and contains entries from January 27, 2001 through September 2, 2014. ECF No. 50-3.

In general, a district court may not consider matters outside of the complaint when ruling on a Rule 12(b)(6) motion to dismiss. "If, on a motion under Rule 12(b)(6) ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). There is, however, an exception to this rule. For Rule 12(b)(6) purposes, courts may consider: (1) exhibits that are attached to the complaint; (2) matters of public record; and (3) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the document is integral to or explicitly relied upon in the complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Weimer does not object to the Court considering the Council Agenda, a public record. Accordingly, the Court will consider Council Agenda in reviewing Cesario's Motion to Dismiss. Weimer objects to the use of the Police Report by the Court in deciding Cesario's Motion to Dismiss. ECF No. 62 at 9, n. 2.

Upon review of the Amended Complaint, the Court finds that while the Police Report arguably may be relied upon in the Amended Complaint, see ECF No. 47 ¶ 33 ("[d]espite this plethora of potential suspects and motives, the investigation file reveals that little to no follow up was conducted by investigators on these leads"), given that it is Cesario's conduct in investigating Haith's murder that is at issue in this action, it would be premature to review the Police Report in deciding the instant Motion to Dismiss. See Rankin v. Majikes, Civ. No. 14-699, 2014 WL 6893693, at *7 (M.D. Pa. Dec. 5, 2014) (where plaintiff filed a Fourth Amendment wrongful seizure claim against police officer, officer moved to dismiss the claim and attached in support of motion an incident report and criminal complaint, court declined to consider the documents concluding "consideration of the Criminal Complaint and Incident Report for the truth of the facts they contain is not proper on a motion to dismiss"). Therefore, the Court will not the review the contents of the Police Report in deciding Cesario's Motion to Dismiss.

## III. FACTUAL ALLEGATIONS

In her Amended Complaint, Weimer alleges the following conduct relevant to Cesario's Motion to Dismiss.

Curtis Haith was murdered in the early morning hours on January 27, 2001, outside of his apartment. ECF No. 47 ¶ 21.  He was beaten and shot in the face. Id. Connellsville police learned that Haith had been at two parties the evening of January 26, 2001, and morning of January 27, 2001, one in Uniontown and one in Connellsville. Id.  ¶ 24. Weimer had attended the first party, in Uniontown, and had been in the car that drove Haith to the second party, in Connellsville. Id. ¶ 26. Along with interviewing other party goers, Connellsville police officers and co-defendants

Cesario and Haggerty interviewed Weimer at her house the same day Haith was murdered. Id. ¶ 25.

When Cesario and Haggerty arrived at Weimer's house, she had been sleeping and was dressed in the same clothes she had worn the night before. Id. They observed what appeared to be mud and blood on Weimer's clothes. Id. Weimer also had injuries to her face and foot. Id.

In light of the mud and blood on her clothes and her injuries, the police, including Cesario and Haggerty, asked Weimer to come with them down to the Connellsville Police Department. Id. Weimer voluntarily accompanied the officers to the police station and readily provided her clothing for forensic testing. Id. At the police station, Weimer told the police she had been at a party with Haith and others in Uniontown, that she, her cousin, Doug Giles ("Giles"), and her minor daughter, Rose, had driven Haith from Uniontown to the Arch Cafe, a bar in Connellsville, left him there, and then returned to Uniontown where she spent the rest of the night at the housing community where her mother and sisters resided. Id. at ¶¶ 26-27. Weimer's location in Uniontown for the rest of the evening after dropping off Haith was corroborated by multiple witnesses. Id. ¶ 27.

In response to questioning about her injuries, Weimer explained to the police, including Cesario and Haggerty, that her foot injury had been caused by horseplay with Michael Gibson ("Gibson"), Weimer's then boyfriend, a few days before, and that the blood on her clothes and injury to her eye had been caused by a fight with Gibson the prior evening (i.e., on January 26, 2001), during which she had bit his thumb, causing Gibson to bleed on her clothing and strike her in the eye. Id. at ¶ 28.

DNA testing of items collected from the crime scene as well as from Weimer's clothing subsequently showed that the blood on Weimer's clothing was Gibson's blood, Haith's blood

was not on Weimer's clothing, and the hair and blood samples found at the scene of Haith's murder did not belong to Weimer, but rather, to an unidentified male. Id. at ¶ 29. Thus, all DNA testing done relative to Haith's murder supported the conclusion that Weimer was not present at the crime scene, corroborated her statements to the police, and supported the accounts of the other individuals who stated to the Connellsville police that Weimer had been in Uniontown, and not in Connellsville, the night of the murder. Id. at ¶ 30.

Even though the DNA evidence fully corroborated Weimer's account of the night of Haith's death and tied an unidentified male's DNA to the crime scene, investigators continued to focus their investigation with tunnel vision on Weimer, to the exclusion of other leads. Id. at ¶ 31. By way of example, witnesses told the Connellsville police that Haith had been involved with drugs, there was drug-related evidence found in Haith's residence upon his death, but no drugs, and yet, there was no indication in the Connellsville police investigative file that the police investigated whether Haith's death was drug-related. Id. at ¶ 32. Similarly, at least eight people came to the police and provided evidence as to who killed Haith. Id. From this evidence ten males were implicated in Haith's death, including a male Haith had recently kicked out of his apartment and another male whom Haith had had an altercation with where a gun had been fired into the air. Id. Yet, the Connellsville police investigative file indicates little to no follow-up was conducted by the police with respect to these leads. Id. The focus of the Connellsville police investigation remained on Weimer, the police stubbornly convinced that they would be able to concoct and create some version of events that could tie Weimer to Haith's murder. Id. at ¶ 34. Cesario retired from the Connellsville Police Department on September 15, 2002. ECF No. 50-2 at 2.

## IV.  DISCUSSION

### A.  Plaintiff's § 1983 Malicious Prosecution Claim - Count I

Cesario contends that Weimer's § 1983 malicious prosecution claim against him must be

dismissed because he retired from the Connellsville Police Department in 2002 and Weimer was

not charged until 2004. ECF No. 51 at 14.

Weimer responds:

> Despite Cesario's attempts to downplay his individual actions, Ms. Weimer's
> Amended Complaint contains detailed allegations concerning Cesario's improper
> and wrongful investigation tactics, which played a crucial role in Ms. Weimer's
> eventual malicious prosecution. Specifically, during the crucial, early stages of the
> investigation, Cesario supervised an investigation that, despite exculpatory
> evidence and other viable leads, recklessly focused with deliberate indifference on
> Ms. Weimer. Am. Compl. ¶¶ 33-34. Cesario disregarded exculpatory DNA
> evidence and other eyewitness statements that fully supported Ms. Weimer's lack
> of involvement in Haith's murder. *Id*. ¶¶ 27-29. At the same time, Cesario failed to
> pursue DNA evidence recovered from the crime scene (unidentified male DNA),
> and ignored drug related evidence from the crime scene. *Id*. ¶¶ 31-32. Even more
> significantly, during the course of the investigation, including Cesario's
> involvement, no less than 8 persons came forward to the police and provided
> evidence as to the actual perpetrator, implicating no less than 10 different suspects,
> all males. *Id*. ¶ 33. Despite this plethora of potential suspects, Cesario's
> investigation conducted little to no follow up, as they continued their single-minded
> pursuit of Ms. Weimer. *Id*. Based upon these allegations, Cesario's improper
> actions undoubtedly contributed to the subsequent decision to prosecute. Cesario,
> the original lead detective, forced the investigation in only one direction, likely
> losing the ability for later law enforcement officers to pursue other more promising
> leads and suspects. Upon his retirement, Cesario handed off his reckless and
> deliberately indifferent investigation and, not surprisingly, Ms. Weimer was
> eventually arrested and prosecuted. The fortunate, "good" timing of Cesario's bad
> action do not insulate him from liability.

ECF No. 62 at 9-10 (footnote omitted).

To prevail on a § 1983 Fourth Amendment malicious prosecution claim under section

1983, a plaintiff must establish that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended
> in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable

cause[3]; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Halsey v. Pfeiffer, 750 F.3d 273, 296–97 (3d Cir. 2014) (citing Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007) (footnote added); see also Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989). "It is settled law that 'officers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions'. If the officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." Halsey, 750 F.3d at 297 (citations and footnote omitted). Actions that are "too minor" or "too removed" from the prosecution or the decision to institute proceeding are insufficient. See Wiltz v. Middlesex Cty. Office of Prosecutor, 249 F. App'x. 944, 950 (3d Cir. 2007). The officer's conduct must be a "significant cause of the prosecution." Aleynikov v. McSwain, Civ. No. 15-1170, 2016 WL 3398581, at *11 (D.N.J. June 15, 2016), opinion clarified, Civ. No. 15-1170, 2016 WL 5340513 (D.N.J. Sept. 22, 2016) (quoting Halsey, 750 F.3d at 297 n. 22).

Thus, the query is whether Weimer has alleged facts from which it is plausible that Cesario "influenced or participated in the decision to institute [the] criminal proceedings [against her]." Halsey, 750 F.3d at 297. Upon review of the factual allegations set forth in Weiner's Amended Complaint related to Cesario's conduct, the Court finds that Weimer has plausibly alleged a § 1983 Fourth Amendment malicious prosecution claim against Cesario. If Cesario, as

---

[3] In Orsatti v. N.J. State Police, 71 F.3d 460 (3d Cir. 1995), the appellate court concluded, "[p]robable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. Rather, probable cause to arrest exists when the facts and circumstances within the arresting officers' knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti, 71 F.3d at 483 (internal citations omitted).

the lead investigator, deliberately chose to focus the investigation on Weimer notwithstanding the exculpatory DNA evidence and eyewitness statements that fully supported her lack of involvement in Haith's murder, and intentionally elected not to follow any other leads in order to focus on Weimer, it is plausible that said decision influenced the decision to institute criminal proceedings even if the decision was not made until after Cesario retired. See Thomas v. City of Phila., 290 F. Supp. 3d 371, 379-80 (E.D. Pa. 2018) (court denied police officer's motion to dismiss § 1983 malicious prosecution claim because he had "contributed to the faulty and fallacious investigation" and thus, "influenced or participated in the decision to institute criminal proceedings"). These same factual allegations support that it is plausible that the proceeding was initiated without probable cause and that Cesario's actions were taken maliciously or for a purpose other than bringing the plaintiff to justice. Accordingly, Cesario's Motion to Dismiss Weimer's § 1983 malicious prosecution claim is denied.

**B. Plaintiff's § 1983 Deprivation Of Liberty Without Due Process and Denial of Fair Trial and Deliberately Failing to Conduct a Constitutionally Adequate Investigation Claim - Count II**

Cesario moves to dismiss Weimer's claim against him in Count II of the Amended Complaint, and argues in support that the Amended Complaint does not contain any factual allegations that support that Cesario had personal involvement in the decision to file criminal charges against Weimer in 2004 or the criminal prosecution that followed. ECF No. 51 at 15. Cesario also contends that Weimer has not alleged any facts in the Amended Complaint that suggest a connection between Cesario's conduct and Weimer's allegations regarding the witnesses identified in the Amended Complaint, Beal, Stenger, Mackey, and Reynolds. Id. Finally, Cesario argues that Weimer's "vague references to an 'inadequate' police investigation do not identify any failure on the part of Defendant Cesario," and that all the factual averments in

the Amended Complaint relate to events that occurred after Cesario retired "rather than actionable conduct by Cesario." Id.

Weimer responds that she has sufficiently alleged a deprivation of due process claim against Cesario because her factual allegations show that Cesario, as lead investigator, conducted a deliberately inadequate or reckless police investigation with respect to Haith's murder, thereby depriving her of due process. ECF No. 62 at 11-12.

In Geness v. Cox, -- F.3d --, 2018 WL 4087887, at *6 n. 5 (3d Cir. Aug. 28, 2018), the United States Court of Appeals for the Third Circuit recently stated with respect to a claim for reckless investigation brought pursuant to the Fourteenth Amendment:

> Although Geness purports to state a claim for reckless investigation under the Due Process Clause of the Fourteenth Amendment, such a claim, if cognizable, could only arise under the Fourth Amendment. See *Manuel v. City of Joliet, Ill*, ⸻ U.S. ⸻, 137 S.Ct. 911, 919, 197 L.Ed.2d 312 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); accord *Albright v. Oliver*, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion). *Geness v. Cox*, No. 17-2073, 2018 WL 4087887, at *6 (3d Cir. Aug. 28, 2018) "Whatever doubts we may harbor as to the viability of such a claim, however, *see Brooks v. City of Chi.*, 564 F.3d 830, 833 (7th Cir. 2009) (observing that "[a] plaintiff cannot state a due process claim by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment" (citations omitted)); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (stating that an officer need not "explore and eliminate every theoretically plausible claim of innocence" even if "an investigation might have cast doubt upon the basis for the arrest" (citations omitted)), we have no occasion to resolve them today [because] no such constitutional right was "clearly established" at the relevant time, as required to overcome qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

Geness, 2018 WL 4087887, at *6 n. 5 (3d Cir. Aug. 28, 2018). See also Johnson v. Logan, 721 F. App'x. 205, 208 n. 9 (3d Cir. 2018) ("We note, without deciding, that we have significant doubts about whether there is an independent substantive due process right to be free from a reckless investigation") (citing Brooks v. City of Chicago, 564 F.3d 830, 833 (7th Cir. 2009)

("[a] plaintiff cannot state a due process claim 'by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.'") (quoting McCann v. Mangialardi, 337 F.3d 782, 786 (7th Cir. 2003))); Newton v. City of New York, 566 F.Supp.2d 256, 278 (S.D.N.Y. 2008) ("[T]here is no constitutional right to an adequate investigation."); Thomas, 290 F. Supp. 3d at 386 (court declined to hold that there was an independent cause of action under the Fourteenth Amendment for failing to conduct a constitutionally adequate investigation, emphasizing "here, even without a stand-alone claim for 'failure to investigate,' the detectives' wrongful conduct is still captured in other claims. For instance, the leads that the detectives failed to investigate pertain to the malicious prosecution claim—the detectives arguably knew enough to realize they did not have probable cause, but they prosecuted Mr. Thomas anyway. The investigation-related issues are indeed addressed in other causes of action in this case"). Pursuant to Geness, supra., Cesario's Motion to Dismiss Weimer's § 1983 claim for reckless investigation in violation of her right to due process must be granted and said claim dismissed with prejudice.

### C. Plaintiff's § 1983 Civil Rights Conspiracy Claim - Count III

In Count III of the Amended Complaint, Weimer alleges a § 1983 civil rights conspiracy claim that implicates each of the individual defendants in this action, Cesario, Haggerty, Ashton, Vernon, and Patton. ECF No. 47 ¶¶ 15-19, 112-120. Weimer claims that at all times relevant to her claims the five individual defendants acted in concert and in conspiracy with one another in order to deprive Weimer of her constitutionally protected rights, from the time period before she was wrongfully convicted of murdering Haith, until after the wrongful convictions were vacated. Id. ¶¶ 20, 115. More specifically, Weimer alleges that the five individual defendants, including

Cesario, were acting within the scope of their employment and under color of state law, when they acted in concert in order to deprive Weimer of her rights under the Fourth, Fifth, and Fourteenth Amendments to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, deprivation of liberty without due process of law, self-incrimination, and to a fair trial. Id. ¶ 113. The object of the conspiracy, to which all the individual defendants agreed and/or came to an understanding about, was to investigate and pursue charges against Weimer as the sole suspect in the murder of Haith regardless of the evidence. Id. ¶¶ 116-117. Weimer alleges that the defendants' combination, agreement, or understanding began when the defendants, investigating Haith's murder under Cesario's lead, acted in concert to ignore the robust and compelling evidence that Weimer did not kill Haith, said evidence being that Weimer's DNA was not found at the scene of Haith's murder, Haith's DNA was not found on Weimer, Weimer's statement that she was not in Connellsville at the time of the murder, and the corroborating testimony of witnesses that Weimer was not in Connellsville at the time Haith was killed. Id. ¶ 117. Despite all of these exculpatory facts, Weimer alleges that the defendants agreed and/or came to an understanding that they would continue to investigate Weimer as the sole suspect. Id. The defendants also acted together to ignore statements by other witnesses that implicated other suspects. Id.

"To state a viable claim for civil rights conspiracy under Section 1983, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Bishop v. Upper Darby Police Dep't, Civ. No. 15-6069, 2018 WL 2359241, at *6 (E.D. Pa. May 24, 2018) (citing Marchese v. Umstead, 110 F. Supp.2d 361, 371 (E.D. Pa. 2000). "Civil rights conspiracies brought under Section 1983 require a 'meeting of the minds,' and to survive screening of a

motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action." Id. (citing Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)). Thus, in Martin v. Secretary of Corrections, Civ. No. 16-2060, 2018 WL 1158250 (M.D. Pa. Mar. 5, 2018), the district court recently explained:

> In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.* A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

Martin, 2018 WL 1158250, at *5. "It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa.1997).

Upon review of the factual allegations contained in Weimer's Amended Complaint, the Court finds that Weimer has sufficiently alleged that during the 20 months Cesario was the lead investigator of the Haith murder for the Connellsville Police Department, Cesario and Haggerty reached an agreement to deprive Weimer of her constitutional rights and engaged in concert action to achieve said agreement. See ECF No. 47 at ¶¶ 16-17, 27-34, 116-117. Cesario's Motion to Dismiss Weimer's § 1983 civil rights conspiracy claim is denied.

### D. Plaintiff's § 1983 Failure to Intervene Claim - Count IV

Cesario moves to dismiss Weimer's § 1983 failure to intervene claim against him, arguing, "the Third Circuit Court of Appeals has not recognized a 'failure to intervene' theory under Section 1983 in this context, i.e., a non-excessive force context." ECF No. 51 at 19. Cesario further contends that Weimer has not alleged facts in her Amended Complaint to support that Cesario was in a position to intervene in the arrest or prosecution of Weimer. Id.

Weimer responds, "as the lead investigative police officer for the first 20 months of the Haith murder investigation, [Cesario] both knew of the ongoing conspiracy to deprive Ms. Weimer of her rights, and had the ability to stop the ongoing conspiracy." ECF No. 62 at 15 (citing ECF No. 47 ¶ 123).

Initially, the Court opines that if the Third Circuit was presented with a non-excessive force case where a law enforcement official had a realistic and reasonable opportunity to intervene in the face of a constitutional violation by a fellow law enforcement official investigating a homicide and he simply refused to intervene, the Third Circuit would find that a viable § 1983 failure to intervene claim had been stated. See Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) (concluding that "[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring."); Woody v. City of Granite City, Ill., Civ. No. 17-534, 2018 WL 587517, at *2 (S.D. Ill. Jan. 29, 2018) (plaintiff who alleged that police defendants knew of the building and zoning defendants' actions (which included harassment, assault,

16

invasion of property, and issuance of baseless citations), had the power to present the actions, and did nothing, had stated a § 1983 failure to intervene claim); Herrera v. City of New Brunswick, Civ. No. 04-3002, 2008 WL 305275, at *10 (D.N.J. Feb. 1, 2008) (same) (citing Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (explaining "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (citing cases).

Upon review of the allegations contained in the Amended Complaint, the Court finds that Weimer has failed to allege a plausible § 1983 failure to intervene claim against Cesario based upon his failure to stop an ongoing conspiracy between conspirators to wrongfully arrest and maliciously prosecute Weimer that did not involve Cesario himself. For that reason, Cesario's Motion to Dismiss to Weimer's § 1983 failure to intervene claim is granted and Weimer's § 1983 failure to intervene claim is dismissed. Said dismissal is without prejudice to Weimer to file a second amended complaint including specific factual allegations that states a plausible § 1983 failure to intervene claim against Cesario since "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility" and in this case, there is no suggestion of bad faith, undue delay, prejudice, or futility. Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004) (citation omitted).

### E. Plaintiff's § 1983 Supervisory Liability Claim – Count V

Cesario moves to dismiss Weimer's § 1983 supervisory liability claim against him on the basis that even assuming Cesario was a supervisor, while "Weimer alleges that Cesario violated her right 'by coercing false witness testimony and ignoring other contradictory evidence' thereby causing 'Weimer's wrongful arrest, prosecution, conviction, and incarceration'," she fails to

allege any facts to "substantiate these legal conclusions." ECF No. 51 at 19. More specifically, Cesario argues that Weimer has not alleged a meaningful connection between Cesario's investigative role in the early stages of the investigation of Haith's murder and the alleged developments that led to her arrest, prosecution, and conviction. Id. at 20.

Weimer asserts that the Amended Complaint alleges that Cesario was the supervisor of Haggerty and other police officers and directly participated with them as they recklessly and deliberately focused their murder investigation for 20 months upon Weimer notwithstanding DNA evidence that fully corroborated her account of the night of the murder and conducted little to no investigation of crime scene DNA, crime scene drug-related evidence, of tips providing leads to multiple potential male suspects. ECF No. 62 at 16.

It is well established that "'[t]here are two theories of supervisory liability,' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations'." Santiago v. Warminster Twp., 629 F.3d 121, 129 n. 5 (3d Cir. 2010) (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).

The Amended Complaint alleges that while acting as the lead investigator of the Haith murder investigation Cesario participated with Haggerty in violating Weimer's constitutional rights, in that Cesario and Haggerty deliberately chose to focus the investigation on Weimer notwithstanding the exculpatory DNA evidence and eyewitness statements that fully supported her lack of involvement in Haith's murder, and intentionally elected not to follow any other leads in order to focus on Weimer, such that after Cesario's retirement, Weimer was wrongfully

arrested and convicted of Haith's murder. As such Weimer has sufficiently alleged facts to support a plausible § 1983 supervisory liability claim against Cesario based upon his participating with Haggerty in violating Weimer's constitutional rights during the 20 months he led the Haith murder investigation. Cesario's Motion to Dismiss Weimer's § 1983 supervisory liability claim is denied.

### F. Plaintiff's State Law Malicious Prosecution Claim– Count VI

Cesario moves to dismiss Weimer's state law malicious prosecution claim against him on the basis that he did not institute charges or take any action with malice or without probable cause. ECF No. 51 at 21. He also contends that he is entitled to immunity pursuant to 42 Pa. Cons. Stat. §§ 8545, 8546, and 8550 as to the claim. ECF No. 51 at 21.

Weimer responds that Cesario's Motion to Dismiss her state law malicious prosecution claim should be denied for the same reason his Motion to Dismiss her § 1983 malicious prosecution claim should be denied. ECF No. 62 at 17. Weimer asserts that immunity is inapplicable because Cesario's reckless and deliberately inadequate investigation falls outside the scope of his duties. ECF No. 62 at 17 (citing Perkins v. Staskiewicz, Civ. No. 08-1651, 2009 WL 693176 (M.D. Pa. Mar. 13, 2009) (denying immunity to state trooper pursuant to 1 Pa. Cons. Stat. § 2310 because "[w]hile properly investigating complaints made to the police department would fall within the scope of his employment, the same cannot be said for conducting a purposefully flawed investigation").

"The elements of a claim for malicious prosecution under Pennsylvania law are: "(1) institution of proceedings against the plaintiff without probable cause and with malice, and (2) the proceedings were terminated in favor of the plaintiff." Bell v. Bor. of West Mifflin, Civ. No. 16-690, 2017 WL 1832494, at *8 n. 4 (W.D. Pa. May 8, 2017) (quoting Manley v. Fitzgerald,

997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) (citation omitted)). As alleged in the amended complaint, Cesario deliberately focused the Haith murder investigation on Weimer even though DNA evidence and eyewitness testimony supported that the plaintiff could not have committed the crime, and he intentionally and recklessly choose to do little to no investigation of any other leads, including investigating crime scene DNA evidence, drug evidence and/or ten other suspects for 20 months. Such conduct states a plausible state law claim of malicious prosecution.

> 42 Pa. Cons. Stat. § 8550 provides:
>
> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, *actual malice* or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa. Cons. Stat. § 8550 (emphasis added). Given that at this juncture of the proceedings, Weimer has alleged facts that support that Cesario's conduct towards her was malicious, he is not entitled to immunity with respect to Weimer's state law malicious prosecution claim. See Agresta v. City of Phila., 694 F. Supp. 117, 123-124 (E.D. Pa. 1988) (plaintiff's state law tort actions, *inter alia*, malicious prosecution, against city police officers would not be dismissed on motion to dismiss based upon immunity pursuant to 42 Pa. Cons. Stat. § 8542 since the torts were intentional torts amounting to "actual malice" or "willful misconduct") (citing 42 Pa. Cons. Stat. § 8550). Cesario's Motion to Dismiss Weimer's state law malicious prosecution claim is denied.

**IV.    CONCLUSION**

For the reasons set forth above, Defendant Thomas Cesario's Motion to Dismiss is granted in part and denied in part. An appropriate Order follows.

**ORDER**

AND NOW this 14th day of September, 2018, it is hereby ORDERED, ADJUDGED, AND DECREED that the Motion to Dismiss filed by defendant Thomas Cesario, ECF No. 50, is granted in part and denied in part as follows:

(1)    As to Count I, the motion is denied as to Plaintiff's § 1983 malicious prosecution claim;

(2)    As to Count II, the motion is granted with prejudice as to Plaintiff's § 1983 Fourteenth Amendment reckless investigation claim

(3)    As to Count III, the motion is denied as to Plaintiff's § 1983 civil rights conspiracy claim;

(4)    As to Count IV, the motion is granted without prejudice as to Plaintiff's § 1983 failure to intervene claim and Plaintiff shall have until October 15, 2018 to file a second amended complaint that states a plausible § 1983 failure to intervene claim against Cesario;

(5)    As to Count V, the motion is denied as to Plaintiff's § 1983 supervisory liability claim; and

(6)      As to Count VI, the motion is denied as to Plaintiff's state law malicious prosecution

claim.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE